IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JONAH SOVEREIGN,                 )
     Plaintiff,                 )        Civil Action Nos. 7:21-cv-00449
                                    )
v.                               )
                                    )        By: Elizabeth K. Dillon
HAROLD W. CLARKE, *et al.*,      )            United States District Judge
    Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonah Sovereign, a *pro se* inmate in the custody of the Virginia Department of

Corrections (VDOC), filed this civil rights action pursuant to 42 U.S.C. § 1983 in the United

States District Court for the Eastern District of Virginia in August 2019.  The case was dismissed

at one point, but Sovereign then filed an amended complaint and, later, a motion to amend.  The

court denied the motion to amend, but ultimately transferred the action to this court on August 9,

2021, approximately two years after it had been filed.  In doing so, that court reopened the case.

The basis for the transfer was that the majority of the events alleged in the complaint occurred at

Buckingham Correctional Center (BCC), which is within the geographic boundaries of this court.

Pending before the court and addressed herein are three motions filed by plaintiff:  (1) a

motion to compel discovery (Dkt. No. 15); (2) a motion for leave to amend (Dkt. No. 16); and

(3) a  joint "motion for extension" and "motion for preliminary injunction" (Dkt. No. 25).[1]

I.  BACKGROUND

**A.  Procedural History**

After the case was transferred from the Eastern District of Virginia and received by this

court, it was conditionally filed.  Sovereign was directed to submit a consent-to-fee form.  He

---

[1]  The first two of these motions are referred to the assigned United States Magistrate Judge, but this court
will withdraw its reference as to those two motions only and will rule on them.

submitted a form, but handwrote several "provisos" on the form, which were effectively conditions that had to be met before he consented to installment payments withdrawn from his prison account.  (Dkt. No. 21.)  Thereafter, the assigned United States Magistrate Judge entered an oral order directing that Sovereign either "prepay the filing fee or execute the enclosed consent to withholding of fees form without revision to the order."  (Dkt. No. 22.)  Sovereign was given fourteen days to do so, and that deadline passed without the court having received anything from Sovereign.

On January 28, 2022, the Clerk received yet another "consent to fee" form from Sovereign, but it again included several modifications.  For example, immediately above his signature, he has written, "without recourse" and "without prejudice UCC 7-207; 1-308; 2-415(b); 3-419."  At the bottom of the form, he wrote, "The capacity that I operate in is securities, solely as secured party," and "Fed. R. Civ. P. 9(a)."

Sovereign has now sent in a notice of a change of address (Dkt. No. 24), and he also has filed a document docketed as a "motion for preliminary injunction and extension of time."  (Dkt. No. 25).  In the latter document, he states that he is "being prevented" from complying with the court's order and he requests an extension of time to comply.  He gives three reasons in support of his request for extension: (1) that he was transferred in retaliation for filing suit against several defendants at BCC, (2) that the facility where he is currently housed is experiencing another COVID outbreak, which is limiting his access to the law library to complete amendments to his complaint, and (3) "all legal papers intended for this court's review" have been in the possession of Sovereign's counselor for "notarization and photocopying" for almost two weeks.  (Dkt. No. 25 at 1.)

In addition to his request for extension, Sovereign asks for a preliminary injunction.  The

specific aspects of that request will be addressed in context below.

**B. Claims in Complaint**

Sovereign's amended complaint (Dkt. No. 6) names seven defendants and contains various claims. Many of these are challenges to specific VDOC policies and their application to him. Although the court will not be addressing the specifics of any claims in this opinion, the court concludes that at least some of the claims are improperly joined or must be severed. The court thus briefly describes Sovereign's claims in order to demonstrate their breadth and scope. Specifically, the amended complaint alleges:

1. Harold Clarke, as Director of VDOC, was obligated to provide an optometrist to render care to inmates at BCC and that he failed to do so, which resulted in Sovereign's waiting months without glasses and a consequent "significant deterioration" of Sovereign's eyesight. (Am. Compl. 6, Dkt. No. 6.)

2. Harold Clarke, as Director of VDOC, was obligated to ensure that BCC's contractually obligated dentist met his contractual obligations. Sovereign was forced to endure 6 months of physical pain due to the lack of oversight and treatment when his tooth "which had a sizable hole in its center, continued to decay." (*Id.* at 6.) This violated Sovereign's Eighth Amendment rights.

3. Defendant Clarke's implementation of VDOC Operating Procedure 803.1 allows for the seizure and subsequent destruction of Sovereign's domestic mail, including greeting cards, children's artwork, and original photos, which violated Sovereign's Fifth, Fourth, and Fourteenth Amendment rights. (*Id.* at 7.)

4. Defendant Clarke's implementation of VDOC Operating Procedure 802.1, Section III, "designates all original incoming mail as "contraband" and subject to

confiscation.  This policy has resulted in the confiscation and/or destruction of several parcels of Sovereign's mail. (*Id.*)  As part of this claim, Sovereign cites to several criminal provisions in Virginia and federal law and alleges that Clarke conspired to deprive him of his rights.  (*Id.*)

5. Defendant Clarke's implementation of VDOC Operating Procedure 802.2. deprives plaintiff of his property.  This policy apparently relates to the interest earned on certain accounts, as well as allowing "slave wages" under the offender work program.  As part of the same claim, Sovereign alleges that Clarke has failed to renegotiate with the commissary vendor to obtain better prices for the inmates for commissary items.  (*Id.* at 8–9.)

6. Defendant Clarke has maintained disciplinary infraction #222, which prohibits "vulgar or insolent language, gestures, or actions" in certain circumstances.  Sovereign alleges that the existence of this infraction restricts his "First Amendment right to Free Speech and implies that anyone and everyone, except the inmate, is of a superior status beyond reproach."  In particular, he contends that the policy is vague as to what can be considered "vulgar" or "insolent."  Sovereign was harmed by this policy when he was convicted of a #222 infraction in March 2019.  (*Id.* at 9–10.)

7.  Defendant Clarke caused injury to Sovereign by implementing changes to VDOC's OP 861.1 that eliminated a 15-calendar-day timeframe to hold a disciplinary hearing when an offender is removed from general population.  This policy changed caused Sovereign to be held for a total of 31 days in a Restricted Housing Unit in 2019 while waiting for a disciplinary hearing.  (*Id.* at 10.)

8. Defendant A. David Robinson (as agent for Clarke and as a co-conspirator) bans all

publications that emphasize or reference depictions of sexual acts (such as erotica), and movies containing [an] "R" rating.  This has violated Sovereign's Fourth and Fourteenth Amendments rights.

9. Robinson maintains a "ban book list" that has caused injury to Sovereign and violates his First Amendment rights because, as applied, it bans a "substantial number of urban novels and magazines" and is "on its face, discriminatory" against African-Americans.  (*Id.* at 11–12.)

10. Robinson's policy implementing Offender Visiting Lists is effectively a "thinly [veiled] plan to deter and eliminate face-to-face visits."  Although Sovereign does not provide any details, he alleges that he "was injured and is susceptible to future injury" as a result of this policy.  (*Id.* at 12.)

11. Defendants Robinson and Clarke have engaged in fraud by requiring Sovereign and other inmates to purchase electronic items from the contracted VDOC vendor, because the items are overpriced and VDOC receives a "cut" of the payment.  (*Id.* at 13.)

12. Defendant Sharon Grigg, BCC's Accounting Manager, has harmed Sovereign because she seizes and disperses incoming deposits to Sovereign's offender trust account in violation of a "very 'specific' amount agreed upon via 'Consent to Fee'" between Sovereign and this court, which he claims is currently in dispute on a petition for writ of certiorari.  (*Id.*)

13. Defendant Stacey Mienhard, BCC's Grievance Ombudsman/Law Library Supervisor, violated his rights when she "impeded his complaints and grievances pertaining to needed medical care" and Grigg's alleged fraud.  (*Id.* at 13–14.)

5

14. Defendant Mienhard retaliated against Sovereign by bringing a #222 charge (vulgar or insolent language) against him, and defendant Forbes, the BCC hearings officer retaliated against Sovereign by convicting him of the offense and imposing a penalty. "Clarke's and Robinson's policies made this possible."  (*Id.* at 14.)

15. Defendant Mienhard again violated Sovereign's Fifth, Eighth, and Fourteenth Amendment rights when she stood over his shoulder "and scan[ned] his legal correspondence" but also confiscated that correspondence and wrote Sovereign a #244 charge, alleging that he engaged in unauthorized use of facility supplies, tools, equipment, or machinery.  She did this to interfere with his access to the courts.  (*Id.* at 14.)  Additionally, her law library "policies are in direct conflict with established state and federal law and the U.S. Constitution."

16. Defendant Virginia Hunt, the BCC Food Service Manager, continues to threaten Sovereign's health with "bulk meat" that the World Health Organization has declared causes cancers in the body.  Sovereign observed the packaging on the "bulk meat" served, which states "Not for Human Consumption."  Hunt also accepts donated and spoiled food, or outdated produce and other food products to deny Sovereign and other inmates healthy food and to save money.  (*Id.* at 14–15.)

17. Defendant Forbes "lied" when she alleged that Sovereign had "threatened bodily harm to her and wrote him an infraction #212 as a result.  This was retaliation for his disrespecting her on a request form after she rendered her "retaliatory guilty verdict." She violated procedural due process by participating in the disciplinary proceeding "to ensure that a guilty verdict was rendered," even though she was required to recuse.  Although she obtained a hearings officer from another facility to hear the

6

charge, she then appeared and conducted the hearing "vicariously."  (*Id.* at 15.)

18. Defendant Booker, BCC's Warden, violated Sovereign's constitutional rights through his responses to Sovereign's grievances and disciplinary appeals.  (*Id.* at 16.)

## II.  DISCUSSION

### A.  Motion to Compel and Motion to Amend

In his first pending motion, Sovereign asks the court to compel discovery from defendants.  (Dkt. No. 15.)  Elsewhere, he has filed two sets of requests for production of documents directed toward defendants.  (Dkt. Nos. 17, 18.)  As explained above, however, this case remains conditionally filed pending Sovereign's submission of a valid consent-to-fee form.  Thus, no defendant has yet been served, and requests for discovery are premature.  The court will therefore deny without prejudice Sovereign's requests for discovery and his motion to compel.  Sovereign may serve discovery on defendants after they are served and respond to the complaint.

The entirety of the motion for leave to amend states that Sovereign asks the court to grant him "leave to amend the pleading or present supplemental pleading upon the grant of [his] motion to compel discovery."  (Dkt. No. 16.)  This motion will be denied without prejudice.  First of all, as already noted, no discovery will be ordered or permitted until after defendants have been served and respond to the complaint.  Also, his motion does not indicate what amendments he would make.  The court cannot consider a motion to amend a complaint without knowing what the proposed amendments would be.  If in the future, Sovereign seeks leave to amend his complaint (whether based on discovery he receives or otherwise), he must file his proposed amended complaint with the court at the same time he files a motion for leave to amend.[2]

---

[2] The court in the Eastern District of Virginia already advised him of this, as well.  (*See* Dkt. No. 9.)

**B.  Motion for Extension and Motion for Preliminary Injunction**

   **1.   Motion for Extension**

   As noted, Sovereign's latest motion (Dkt. No. 25) contains both a motion for extension and a motion for preliminary injunction.  The motion for extension was sent before the latest consent-to-fee form he submitted.  (Dkt. No. 27.)  Because that form did not comply with the court's prior instruction, which specifically instructed that the form had to be submitted "without revision," it cannot be accepted as a valid consent-to-fee form.

   Accordingly, the court will grant Sovereign's motion for extension and give him one additional opportunity to submit his consent-to-fee form.  He will have fourteen days from the entry of this order to either prepay the filing fee or provide an *unaltered*, *unmodified* consent-to-fee form.  If he fails to do so and fails to show good cause for failing to meet this deadline, this action may be dismissed without prejudice in its entirety.

   **2.   Motion for Preliminary Injunction**

   Sovereign's request for a preliminary injunction requests four different types of injunctive relief.  First, he requests that the court "suspend[]" VDOC's "ban book list."  (Dkt. No. 25 at 2.)  Second, he asks that the court prohibit VDOC from enforcing disciplinary proceedings based on its prohibition on "vulgar and/or insolent language, gestures or actions directed toward an employee, or directed toward, or in the presence of, persons who are not offenders or not employed by DOC" because that prohibition is being used "to censor Plaintiff and abridge the First Amendment."  Third, he asks the court to order that he be transferred back to BCC or an equivalent level three facility so that he may access the library and the courts. Fourth and finally, he asks that the court "direct[] [VDOC] to enforce [its] contract with JPAY" to prevent further deprivation of his "property ([m]edia device and music)."  Sovereign alleges

that he purchased this property, but has been deprived of since August 2021 because of "the company's refusal to replace JP5 mini tablet or allow the purchase of a new device." (*Id.*)

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). And with regard to the second element, the movant must show a reasonable likelihood that the harm is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812.

The court has reviewed the record and concludes that Sovereign is not entitled to the injunctive relief he seeks. The court has carefully considered the *Winter* factors and concludes that Sovereign cannot establish at least one of the requirements with regard to all of his requests for relief.

First of all, as is applicable to all four of his requests, his amended complaint contains misjoined claims and defendants, in violation of Federal Rules of Civil Procedure 18 and 20.[3] Even if not misjoined, he has brought numerous claims arising from different policies and

---

[3] Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to join "either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Rule 20 of the Federal Rules of Civil Procedure allows the joinder of several parties only if the claims arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants.

incidents in a single lawsuit, which contravenes the purpose of the Prison Litigation Reform Act. Thus, once Sovereign submits his consent-to-fee form, the court will direct that he file a proper complaint without misjoined claims, or (even if they are all properly joined) the court will nonetheless sever his claims under Federal Rule of Civil Procedure 21. *See Spencer v. White & Prentis, Inc. of Conn. V. Pfizer, Inc.*, 498 F.3d 358, 362 (2d Cir. 1974) ("[J]ustification for severance is not confined to misjoinder of parties."). *See also Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (approving of use of Rule 21 to sever unrelated claims in prisoner complaint). At this point, then, it is impossible even to know which claims will remain part of this case. Any request for preliminary injunction, however, must relate to the claims in the complaint. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). Put differently, the movant must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.* Because we cannot know at this point whether the relief Sovereign seeks in his motion for preliminary injunction will relate to the claims that ultimately will remain in the case, that fact alone requires denial of his motion. *See id.*

The court also briefly addresses each of his four requests separately. First, Sovereign requests that the court "suspend[]" VDOC's "ban book list." (Dkt. No. 25 at 2.) Although his amended complaint references exhibits, the exhibits are not attached, nor were they provided with the original complaint. His amended complaint contains no information about the contours or specifics of the supposed policy that bans books, nor does he provide any details about what books are on that list that he seeks to possess or has been prevented from possessing. In the absence of more information, he has not shown a likelihood of success on the merits, at least based on the record before the court.

Second, Sovereign asks that the court prohibit VDOC from enforcing disciplinary

proceedings based on its prohibition on "vulgar and/or insolent language, gestures or actions directed toward an employee, or directed toward, or in the presence of, persons who are not offenders or not employed by DOC" because that prohibition is being used "to censor Plaintiff and abridge the First Amendment."  As an initial matter, Sovereign's complaint does not identify what language he used or was convicted of using, so it is impossible to fully evaluate his claim, and he has failed to meet his burden of showing a likelihood of success on his claim.  Moreover, it is worth noting that the Fourth Circuit has addressed this very policy in a different case, and concluded that the plaintiff's First Amendment rights were not violated by a disciplinary conviction under the policy.  *Huff v. Mahon*, 312 F. App'x 530 (4th Cir. 2009).  In affirming the district court, the *Huff* Court quoted from the district court's opinion, which had summarized that "[a]n inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments."  *Id.* at 532.  The Fourth Circuit also briefly discussed the Supreme Court's decision in *Shaw v. Murphy*, 532 U.S. 223 (2001), which "indicated that the pertinent question for a prisoner's First Amendment case is whether the prison regulation, as applied to the prisoner, is reasonably related to legitimate penological interests, and the prisoner must overcome a presumption that the prison officials acted within their broad discretion in order to prevail."  *Huff*, 312 F. App'x at 532 (citing *Shaw*, 532 U.S. at 232); *see also Hale v. Scott*, 371 F.3d 917, 919 (7th Cir. 2004) (rejecting an inmate's free speech claim based on discipline for disrespect to a prison staff member because "[p]rison regulations that forbid inmates to behave insolently toward guards are constitutional").  Again, at least in part because of the limited information plaintiff has provided, he has not shown a likelihood of success on the merits.

Moreover, although he was once convicted under the policy, he has not indicated that he intends to engage in speech that is likely to fall within the policy or result in further discipline. Thus, he also has failed to show a "reasonable likelihood" that the harm he seeks to prevent is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812.

With regard to Sovereign's third request, in which he asks to be returned to BCC or another security level 3 facility, the court concludes that such relief is inappropriate here. In particular, prisoners have no constitutional right to be housed in a particular institution or particular housing unit. *Meachum v. Fano*, 42 U.S. 215, 224 (1976). Relatedly, the decision about where to house any particular inmate is generally committed to the discretion of the state's prison officials, and a federal court generally must show deference to such decisions. *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980). This is particularly true here, because it appears that Sovereign was transferred to a higher-level security facility based on disciplinary infractions. Although he challenges (at least some of) those infractions here, housing decisions based on security concerns are particularly entitled to deference. For these reasons, his motion for preliminary injunctive relief in the form of a transfer will be denied.

His fourth request, which pertains to a deprivation of his property, also fails to meet the *Winter* standard. First of all, it appears that his dispute about his media device and music is with JPAY, not VDOC. If he believes JPAY has violated a contract right of his, he should pursue that claim against JPAY. Even if JPAY were named as a defendant, moreover, he has not stated a constitutional violation against them or against VDOC. Allegations that prison officials deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Because Sovereign possessed tort remedies under Virginia

state law, see Virginia Code § 8.01–195.3, he has not shown a likelihood of prevailing on any

constitutional claim for the alleged property loss in this case.[4]

Moreover, a loss of property generally is compensable at the completion of a lawsuit.

Thus, a failure to award injunctive relief in this circumstance would not result in "irreparable

harm."  Put differently, "harm is not 'irreparable' if it can be compensated by money damages."

*Brightview Group, LP v. Teeters*, 441 F. Supp. 3d 115, 137 (D. Md. 2020) (citations omitted);

*Hughes Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (holding

that purely monetary losses do not give rise to "irreparable harm" absent extraordinary

circumstances).[5]

### III.  CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that:

1.  The reference of Dkt. Nos. 15 and 16 to the assigned United States Magistrate Judge

    is WITHDRAWN;

2.  Sovereign's motion to compel (Dkt. No. 15) is DENIED WITHOUT PREJUDICE;

3.  Sovereign's motion to amend (Dkt. No. 16) is DENIED WITHOUT PREJUDICE;

4.  Sovereign's motion (Dkt. No. 25) is DENIED IN PART and GRANTED IN PART

    (A) His motion for extension (the first part of Dkt. No. 25) is GRANTED, and he

        shall have fourteen days from the entry of this order to either prepay the entire

---

[4]  It does not appear that Sovereign is claiming that he was deprived of his property pursuant to a prison policy, so the court does not address the slightly different analysis for a deprivation pursuant to policy, which can sometimes require pre-deprivation procedures.  *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that a violation occurs only if the procedural protections in the policy are inadequate to ensure that deprivations are lawful).

[5]  Some of the "extraordinary circumstances" identified by the *Hughes Network Systems* court were that: (1) the movant's business would fail in the absence of relief; or (2) damages would be unobtainable from the defendant due to future likely insolvency.  *Id.* at 694.  Those circumstances are not present here.

filing fee or submit an unaltered consent-to-fee form.  The Clerk shall provide another consent-to-fee form to Sovereign with his copy of this order.  ***Sovereign is advised that his failure to timely comply with this order may result in the dismissal of the entire action without prejudice***; and

(B) Sovereign's motion for preliminary injunction (the second part of Dkt. No. 25) is DENIED.

The Clerk is directed to provide a copy of this memorandum opinion and order to Sovereign.

Entered: February 3, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

**INMATE CONSENT FOR WITHHOLDING OF PAY**
**FOR ASSESSED FILING FEE FOR THE WESTERN DISTRICT OF VIRGINIA**

**JONAH SOVEREIGN,**                                    **Civil Action No.  7:21-cv-00449**
      **Plaintiff,**

**v.**                                    # CONSENT TO FEE

**HAROLD W. CLARKE, et al,**
    **Defendant(s),**

I, JONAH SOVEREIGN , 1399348, hereby consent for the appropriate prison officials to withhold from my prison account an initial payment of **$18.58** and to collect on a continuing basis each month, an amount no more than 20% of each prior month's income, until such time as the filing fee of **$350.00** has been collected in full.  Each time the collection of payments reaches the amount of $10.01, the Trust Officer shall forward the interim payment to the Clerk's Office, U. S. District Court, 210 Franklin Road, S.W. Suite 540, Roanoke, VA 24011-2208, until such time as the fees are paid in full. By executing this document, I also authorize withholding of any amount of costs, sanctions, and/or fees which may be imposed by the Court as a result of or during this litigation.


I agree that if I am transferred prior to payment of the full fee, the balance owing will be reported to the new institution with directions to continue the withdrawal of funds until the entire fee is paid. Payment will continue, if necessary, after resolution of this action until the full filing fee is paid.


                                 _____
                                 SIGNATURE OF PLAINTIFF

                                 DATE_____


***After signing this form, I understand that I am to send it back to the Court for processing to: Clerk, U.S. District Court, 210 Franklin Road, S.W. Suite 540, Roanoke, VA 24011-2208.